UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

ANTHONY NASTI,

                Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

---------------------------------------------------------------

          **MEMORANDUM & ORDER**
          25-CV-3255 (MKB)

MARGO K. BRODIE, United States District Judge:

Plaintiff Anthony Nasti commenced the above-captioned action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner"), objecting to the determination that he became disabled on December 15, 2023, and denying his claim for Social Security disability insurance benefits under the Social Security Act (the "SSA") for the alleged period of August 1, 2020 to December 15, 2023. (Compl., Docket Entry No. 1.) Plaintiff moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, arguing that Administrative Law Judge Mary Ann Poulose (the "ALJ") erred when she determined that Plaintiff's residual functional capacity ("RFC") included the ability to perform medium exertion work prior to December 15, 2023, because the ALJ failed to adequately consider all of the medical evidence presented. The Commissioner cross-moves for judgment on the pleadings, arguing that substantial evidence supported the ALJ's findings.[1]

---

[1] (Pl.'s Mot. for J. on the Pleadings ("Pl.'s Mot."), Docket Entry No. 6; Pl.'s Mem. in Supp. of Pl.'s Mot., appended to Pl.'s Mot. ("Pl.'s Mem."), Docket Entry No. 6-1; Comm'r Cross-Mot. for J. on the Pleadings ("Comm'r Cross-Mot."), Docket Entry No. 9; Comm'r Mem.

For the reasons set forth below, the Court denies Plaintiff's motion for judgment on the pleadings and grants the Commissioner's cross-motion for judgment on the pleadings.

## I.    Background

On January 7, 2023, Plaintiff filed an application for a period of disability and disability insurance benefits, with a disability onset date of August 1, 2020, (Certified Admin. R. ("R.") 10, Docket Entry No. 5), due to issues with his left knee, spine, and left hip, (*id.* at 51, 173; *see also* Joint Stip. of Facts 1, Docket Entry No. 10).  The Social Security Administration initially denied his claims on May 19, 2023, and also denied his reconsideration motion on March 7, 2024.  (R. 10.)  Plaintiff filed a written request for a hearing on March 13, 2024, and the ALJ held a telephonic hearing on August 27, 2024.  (*Id.*)  By decision dated August 30, 2024, the ALJ determined that Plaintiff (1) was not disabled prior to December 15, 2023, but became disabled on that date, (*id.* at 10), and (2) Plaintiff met the insured status requirements of the SSA through December 31, 2023, (*id.* at 12).[2]  Plaintiff appealed the date of onset of disability, and on June 3, 2025, the Social Security Administration Appeals Council denied Plaintiff's request for review of the ALJ's determination, rendering the ALJ's decision final.  (*Id.* at 1–5.)  Plaintiff timely appealed to the Court.[3]  (*See* Compl.)

---

in Supp. of Comm'r Cross-Mot., appended to Comm'r Cross-Mot. ("Comm'r Mem."), Docket Entry No. 9-1.)

[2]  For claims for a period of disability and disability insurance benefits, a claimant must show that he has met the requirements of sections 216(i) and 223 of the SSA, which establish the necessary conditions of an individual's insured status.  Plaintiff does not contest this determination.

[3]  This case was reassigned from Judge Natasha C. Merle to the undersigned on April 21, 2026.

### a.   August 27, 2024 hearing before the ALJ

At the hearing, Plaintiff and Vocational Expert Whitney Ayer ("VE Ayer") each testified. (R. 39–49.)

### i.   Plaintiff's testimony

Plaintiff testified that he earned a two-year Associate's degree in business and worked in commercial leasing.[4] (R. 39.) He had pain in his knee and hips, his knee sometimes popped, he could walk for approximately ten minutes "[i]f slow and easy," (*id.* at 40), and he could stand for a maximum of forty-five minutes, (*id.* at 47). He began using a cane around 2018 "[a]s security" and full-time in 2021. (*Id.* at 41–42.) Plaintiff stated he does not exercise much, and he does not go grocery shopping, cook, or do laundry. (*Id.* at 43–46.) Whenever he sat, his leg went numb and it was painful, limiting his driving ability to five to ten minutes. (*Id.* at 40.)

Plaintiff testified that he got a few injections in his knee that brought some initial relief, but he could not bend over to pick up a piece of paper that fell on the floor. (*Id.* at 40–41.) He was taking various anti-inflammatory and antidepressants. (*Id.* at 42.)

### ii.   VE Ayer's testimony

The ALJ asked VE Ayer to assume an individual of Plaintiff's age and education, and without past work experience who could perform light work or medium work involving only occasional climbing, crouching, crawling, stooping, or kneeling. (R. 48.) VE Ayer testified that the hypothetical worker could perform jobs such as kitchen helper, with approximately 200,000 jobs nationally; cook helper with approximately 198,000 jobs nationally; and hospital cleaner with approximately 183,000 jobs nationally. (*Id.* at 48.) Plaintiff's attorney did not question VE Ayer. (*Id.*)

---

[4] The ALJ did not question Plaintiff about his age, but the record shows he was 65 years old at the time of the hearing. (*See* R. 55.)

#### b.  Additional medical evidence

The record contains medical opinions from four physicians — John Fkiaras, Shye Wortman, A. Sinha, and S. Naroditsky[5]— and other doctors' notes.

The parties stipulate that Plaintiff's first record of treatment during the relevant period is an annual physical from June of 2021 by Dr. Wortman who noted no abnormalities in Plaintiff's physical condition.  (Joint Stip. of Facts 2; R. 301–04.)  In November of 2021, Dr. Alexander Simotas saw Plaintiff for a consultation regarding his bilateral hip pain and low back pain, where Plaintiff reported exercising daily, and demonstrated physical strength including full motor strength, negative straight leg raising, and normal lumbar flexion and extension.  (Joint Stip. of Facts 2; R. 446–48.)  Dr. Simotas noted X-ray imaging showed mild osteoarthritis in the hips, and Dr. Simotas administered bilateral injections.  (Joint Stip. of Facts 2; R. 449–50, 457–58.)  Plaintiff returned to Dr. Simotas in March of 2022 and reported worsening bilateral hip pain but denying back pain.  (Joint Stip. of Facts 2; R. 443.)  Dr. Simotas assessed gluteal tendinitis and administered injections.  (Joint Stip. of Facts 2; R. 444–45.)

In late April of 2022, Plaintiff had an annual physical with Dr. Wortman and reported feeling well and exercising, and Dr. Wortman noted no abnormalities.  (Joint Stip. of Facts 2; R. 296–99.)  Plaintiff reported similar improvements to Dr. Simotas in July of 2022, telling him that

---

[5]  The ALJ rejected the opinions of medical professionals Dr. Sinha and Dr. Naroditsky, both of whom were consultants of the New York State Division of Disability Determinations, because they were not supported by evidence in the record.  (R. 18.)  Plaintiff does not contest the ALJ's rejection of those opinions, (Pl.'s Mem. 9 n.3), and the opinions are not discussed in the Joint Stipulation of Facts, (*see* Joint Stip. of Facts).  The Court reviewed the opinions of Dr. Sinha and Dr. Naroditsky and finds the ALJ's rejection of the opinions is supported by substantial evidence and contains no legal error. *See Schillo v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022) ("We may vacate the agency's disability determination only if it is based on legal error or unsupported by 'substantial evidence'— that is, if no reasonable factfinder could have reached the same conclusion as the ALJ.").

he "had significant relief" after injections the previous year but that his hip pain had recurred, and he continued to exercise but switched from running to a stationary bike.  (Joint Stip. of Facts 2–3; R. 439–41.)

At an appointment with Dr. Wortman in November of 2022, Plaintiff reported that he exercised regularly with no exertional symptoms, and Dr. Wortman noted no abnormalities upon physical examination.  (Joint Stip. of Facts 3; R. 287–89.)  Likewise, at Plaintiff's appointments with Dr. Wortman in June of 2023 and in October of 2023, Plaintiff had normal physical exams, reported feeling well at the June of 2023 appointment, and reported exercising at the October of 2023 appointment.  (Joint Stip. of Facts 3; R. 282–83, 433–35.)

Dr. Fkiaras submitted a medical examination questionnaire dated December 15, 2023 which provided that Plaintiff had reported pain in the knees, hips, feet, right ankle, and low back for many years.  (R. 422–23; *see* Joint Stip. of Facts 3–4.)  Dr. Fkiaras opined that a cane was medically necessary as Plaintiff demonstrated several physical limitations consistent with reduced range of motion in the lumbar spine, both hips, and both knees.  (R. 424–25.)

Four days later on December 19, 2023, Dr. Wortman assessed osteoarthritis of the left hip and left knee and instructed Plaintiff to take Tylenol before exercising.  (Joint Stip. of Facts 4; R. 432–33.)

In June of 2024, Plaintiff saw Dr. William Macaulay for worsening bilateral knee and hip pain, and X-rays showed moderate osteoarthritis of the right hip, mild osteoarthrosis of the left hip, and no significant degenerative changes in the knees.  (Joint Stip. of Facts 4; R. 459–67.)

A functional-capacities questionnaire by Dr. Wortman from July of 2024 listed diagnoses of severe osteoarthritis of the bilateral hips and knees, citing chronic pain, limited mobility, and decreased strength, and identified several exertional limitations.  (R. 502; *see* Joint Stip. of Facts

5

5.)  Dr. Wortman noted that those limitations had been present for two to three years.  (R. 503; Joint Stip. of Facts 5.)

### c.    The ALJ's decision

By decision dated August 30, 2024, the ALJ determined that Plaintiff (1) became disabled on December 15, 2023, and (2) was not disabled at any time from August 1, 2020, the alleged onset date of disability, through December 15, 2023, the date the ALJ determined Plaintiff also had the severe impairment of degenerative changes to the lumbar spine.  (R. 12–13.)  In arriving at her conclusion, the ALJ conducted the five-step procedure for evaluating disability claims.[6]  (*Id.* at 12–21.)

At step one, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the alleged date of his disability onset.  (*Id.* at 12.)  At step two, the ALJ found that Plaintiff had (1) degenerative joint disease of the hips and (2) obesity, since the alleged date of his disability onset, August 1, 2020, both of which the ALJ determined were severe impairments. (*Id.* at 12–13.)  As of the established onset date of disability, December 15, 2023, the ALJ found that Plaintiff had (1) worsening degenerative joint disease of the hips, (2) obesity, and (3) degenerative changes to the lumbar spine, which the ALJ determined were all severe

---

[6]  The five-step sequential process outlined by the SSA considers: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.  *Schillo*, 31 F.4th at 70 (citing 20 C.F.R. § 404.1520(a)(4)(i)–(v)); *see* 20 C.F.R. § 416.920(a); *see also Nunez v. Comm'r of Soc. Sec.*, 164 F.4th 60, 67 (2d Cir. 2025) (explaining SSA's five-step inquiry for disability determinations).

impairments.[7] (*Id.*)  The ALJ determined that Plaintiff's degenerative changes to his lumbar spine were not a severe impairment before the established onset date because (1) imaging from November of 2021 showed only moderate degenerative changes with examination findings that were "fairly unremarkable;" (2) Plaintiff complained of back pain in November of 2021 but had negative straight leg raising and full range of motion in the spine and was not specifically treated for his spine; (3) Plaintiff reported hip pain on March 15, 2022 but denied back pain; (4) Plaintiff purported to exercise regularly without exertional symptoms in his treatment notes from November of 2022; and (5) at a physical on June 20, 2023, Plaintiff reported feeling well.  (*Id.* at 13.)  Further, the ALJ determined that there was not a "medically determinable impairment that explain[ed] the [Plaintiff's] complaints of knee pain or knees giving out."  (*Id.* at 14.)

At step three, the ALJ determined that Plaintiff had not had an impairment, or combination of impairments, that met or medically equaled the criteria of a listed impairment since August 1, 2020.  (*Id.*)

The ALJ then assessed Plaintiff's RFC under step four and determined that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c)[8] prior to December 15, 2023, except that he could only occasionally climb, crouch, crawl, stoop, and kneel.  (*Id.* at 15.)  The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [the alleged] symptoms [were] not fully supported prior to December 15, 2023" because "[t]he record before the established onset date showed few positive findings, response to

---

[7]  The ALJ also found that Plaintiff was diagnosed with hyperlipidemia and anxiety, which she found were non-severe and "would not cause more than a slight effect on [Plaintiff's] ability to work."  (R. 13.)

[8]  20 C.F.R. § 404.1567(c) defines medium work as involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."

treatment, and [Plaintiff was] able to perform activities such as exercising." (*Id.* at 16.)  The ALJ then examined each medical opinion and the prior administrative medical findings submitted by Plaintiff and found Dr. Wortman's form questionnaire unpersuasive because the record was inconsistent with her findings of manipulative limitations, and her treatment notes were not consistent with Plaintiff having severe degenerative changes to the hips and spine.  (*Id.* at 17–18.)  The ALJ also did not find Dr. Fkiaras' opinion persuasive for the entire alleged period — finding it unpersuasive before December 15, 2023, the date of evaluation, but persuasive from December 15, 2023 onward — because his opinion regarding Platiniff's limitations prior to December 15, 2023 was inconsistent with other evidence such as 2021 imaging of the hips which "only showed 'mild' degenerative changes without an acute osseous abnormality," reported relief in July of 2022 from injections from the prior year, and a normal physical examination in June of 2023.  (*Id.* at 18.)

The ALJ also determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b)[9] prior to December 15, 2023 except that he could only occasionally climb, crouch, crawl, stoop, and kneel and would require a cane.  (*Id*. at 18–19.)  The ALJ found the "evidence as of the established onset date is consistent with [Plaintiff] not being able to perform the heavier lifting required of medium work, and the [Plaintiff's] complaint of difficulty lifting," and she cited Dr. Fkarias's consultative examination from the established onset date. (*Id.* at 19–20.)  In addition, the ALJ found Dr. Wortman's opinion inconsistent with the other

---

[9]  20 C.F.R. § 404.1567(b) defines light work as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."

evidence in the record.  The ALJ found persuasive Dr. Fkiaras' opinion from the consultative examination that Plaintiff had "moderate-to-marked limitation standing for extended periods and moderate limitation sitting for extended periods."  (*Id.* at 20.)

At step 5, the ALJ found that, given this RFC, Plaintiff could have performed work existing in significant numbers in the national economy until December 15, 2023.  (*Id.* at 21.) Based on the testimony of VE Ayers, the ALJ found that Plaintiff would have been able to perform the requirements of representative occupations such as kitchen helper, cook helper, and hospital cleaner.  (*Id.* at 20–21.)  The ALJ therefore concluded that Plaintiff was not under a disability within the meaning of the SSA prior to December 15, 2023.  (*Id.* at 22.)

## II.  Discussion

### a.  Standard of review

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision."  *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) (citing *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002)), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005); *see Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (quoting *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012)).  "'Substantial evidence' is 'a very deferential standard of review,'" *Nunez v. Comm'r of Soc. Sec.*, 164 F.4th 60, 70 (2d Cir. 2025) (quoting *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022)), "even more so than the clearly erroneous standard," *Benjamin v. Comm'r of Soc. Sec.*, No. 25-2343, 2026 WL 697004, at *1 (2d Cir. Mar. 12, 2026) (summary order) (quoting *Schillo*, 31 F.4th at 74).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (quoting *Moran v.*

9

*Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)); *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (per curiam) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (same); *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (quoting *Richardson*, 402 U.S. at 401) (same); *see also Benjamin*, 2026 WL 697004, at *1 (same); *Schillo*, 31 F.4th at 74 (same).  Once an ALJ finds facts, the court "can reject those facts only if a reasonable factfinder would have to conclude otherwise."  *Nunez*, 164 F.4th at 70 (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012)); *see Anthony v. Saul*, No. 24-2163, 2025 WL 2848224, at *1 (2d Cir. Oct. 8, 2025) (summary order) (quoting same); *Rushford v. Kijakazi*, No. 23-317, 2023 WL 8946622, at *1 (2d Cir. Dec. 28, 2023) (summary order) (quoting same); *Talyosef v. Saul*, 848 F. App'x 47, 48 (2d Cir. 2021) (quoting same).  "Indeed, under the substantial evidence standard, the SSA's determination must be upheld if it is rational and supported by the record, even '[i]f [the] evidence is susceptible to more than one rational interpretation.'"  *Nunez*, 164 F.4th at 70 (alterations in original) (quoting *Schillo*, 31 F.4th at 74); *see Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (The court "defer[s] to the Commissioner's resolution of conflicting evidence." (quoting *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012))); *see also Spottswood v. Kijakazi*, No. 23-54, 2024 WL 89635 (2d Cir. Jan. 9, 2024) (summary order) (quoting same).  If, however, the Commissioner's decision is not supported by substantial evidence or is based on legal error, a court may set aside the Commissioner's decision.  *See, e.g.*, *Nunez*, 164 F.4th at 64 (remanding to the Commissioner because the ALJ's RFC determination was not supported by substantial evidence); *Rubin v. O'Malley*, 116 F.4th 145, 160 (2d Cir. 2024) (remanding because substantial evidence did not support the ALJ's determination regarding disability status); *Colgan v. Kijakazi*, 22 F.4th 353, 363–64 (2d Cir. 2022) (remanding because substantial evidence did not support the Commissioner's decision); *see also Prince v.*

*Astrue*, 514 F. App'x 18, 19–20 (2d Cir. 2013) ("A court may set aside the Commissioner's decision only if it is based upon legal error or if his factual findings are not supported by substantial evidence in the record as a whole." (first citing 42 U.S.C. § 405(g); and then citing *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008))).  The SSA "must be liberally applied, for it is a remedial statute intended to include not exclude." *Moran*, 569 F.3d at 112; *see also Dany Z. v. Saul*, 531 F. Supp. 3d 871, 881 (D. Vt. 2021) ("In its deliberations, a court should bear in mind that the Social Security Act is 'a remedial statute to be broadly construed and liberally applied.'" (quoting *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981))).

**b.   The record supports the ALJ's step four determination**

Plaintiff argues that the ALJ erred at step four of the sequential evaluating process where she determined that Plaintiff was capable of meeting the demands of medium work prior to December 15, 2023.  (Pl.'s Mem. 8.)  In support, Plaintiff argues that the ALJ improperly dismissed the opinions of Dr. Wortman and Dr. Fkiaras and concluded "without a shred of supportive medical opinion" that Plaintiff was fully capable of performing medium work through the relevant period preceding December 15, 2023.  (*Id.* at 9, 12.)  First, Plaintiff argues that Dr. Wortman's opinion provided that as early as July of 2022, and potentially even a year earlier, Plaintiff was unable to perform even sedentary work.[10]  (*Id.* at 9.)  Plaintiff also contends that Dr. Wortman was "especially well positioned to assess [P]laintiff's RFC" as his attending physician and that the law required the ALJ to reach out to Dr. Wortman for clarification, or direct Plaintiff's counsel to do so, prior to dismissing his medical opinion if the ALJ believed the

---

[10]  20 C.F.R. § 404.1567(a) defines sedentary work as involving "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties."

opinion was inconsistent with treatment records. (*Id.* at 10.) Second, Plaintiff argues that the ALJ's evaluation of Dr. Fkiaras' assessment was "flawed" because (1) his assessment does not support that there "had been a change in [P]laintiff's RFC status" on December 15, 2023, and (2) his assessment was inconsistent with the ALJ's finding of a capacity for light work after December 15, 2023 and instead Dr. Fkiaras' assessment supports a finding of sedentary or less than sedentary activity. (*Id.* at 11–12.) Third, Plaintiff argues that the ALJ did not solicit an opinion or testimony at the hearing to understand when Plaintiff's physical condition changed such that he lost the capacity for medium work and became limited to light activity. (*Id.* at 12.) Fourth, Plaintiff contends that the ALJ's RFC finding of medium work "challenges common sense and common experience" because medium work is physically demanding and Plaintiff was "at all relevant times a sexagenarian with multiple musculoskeletal disorders and reliant on a cane for walking." (*Id.*)

The Commissioner argues that substantial evidence supports the finding that Plaintiff could do a range of medium exertion work prior to December 15, 2023 and the ALJ's decision is free of legal error. (Comm'r Mem. 1, 3.) The Commissioner points to the ALJ's cited supporting evidence including imaging showing only mild degeneration in Plaintiff's hips; examinations showing normal strength, sensation, and gait; and Plaintiff's reported regular exercise and significant relief from injections. (*Id.* at 1.) First, the Commissioner argues that an RFC finding is administrative in nature, not medical, and need not match a medical opinion in the record so long as it is supported by substantial evidence. (*Id.* at 4 (citations omitted).) Second, the Commissioner argues that "[a] reasonable mind could accept" the numerous facts cited by the ALJ to support the RFC finding including the "largely unremarkable medical evidence, 'significant relief' from injections, regular exercise without symptoms, and few

12

complaints." (*Id.* at 5.)  Third, the Commissioner argues that Plaintiff does not cite any evidence to support greater functional limitations prior to December 15, 2023.  (*Id.*)

Fourth, the Commissioner contends that the ALJ reasonably found Dr. Wortman's opinion unpersuasive because it was inconsistent with Dr. Wortman's own medical examination findings and treatment history from Plaintiff's visits from June of 2021 until October of 2023 and with other evidence in the record — "[i]n fact, Dr. Wortman did not document any musculoskeletal complaint until December 19, 2023, [] after the ALJ found Plaintiff became disabled." (*Id.* at 6–7.)  The Commissioner further argues that Plaintiff fails to challenge the ALJ's reasons for finding Dr. Wortman's opinion unpersuasive because his contention that Dr. Wortman is "especially well positioned" to assess his functioning runs contrary to the regulations which prohibit deference to any source and prioritizes supportability and consistency of opinions.  (*Id.* at 7.)  Moreover, the Commissioner argues that having found Dr. Wortman's opinion unsupported and inconsistent with the record, the ALJ was not required to recontact Dr. Wortman for additional questioning.  (*Id.*)

Fifth, the Commissioner argues that Plaintiff's challenge to the ALJ's finding of Plaintiff's capacity for light work beginning on December 15, 2023 based on Dr. Fkiaras' opinion is immaterial to Plaintiff's claim because the ALJ nevertheless concluded that Plaintiff became disabled on that date, which is the most favorable finding she could make.  (*Id.* at 8.)  ``

Sixth, the Commissioner refutes Plaintiff's suggestion that Dr. Fkiaras' opinion required the ALJ to find greater limitations prior to December 15, 2023 because Plaintiff had the burden to prove when he became disabled, and substantial medical evidence supports the ALJ's conclusion that Dr. Fkiaras' opinion was unpersuasive prior to December 15, 2023, because it was inconsistent with the other medical evidence provided up until that date.  (*Id.* at 8–9.)

13

Seventh, the Commissioner argues that Plaintiff's conclusory allegation that he could not do medium work as a "sexagenarian with multiple musculoskeletal disorders and reliant on a cane for walking" is unpersuasive because (1) age is not relevant to the RFC assessment, (*id.* at 9); (2) Plaintiff does not challenge the ALJ's finding regarding his severe impairments and "mere diagnosis of [a condition] without a finding as to the severity of symptoms and limitations does not mandate a finding of disability" (*id.* at 9–10 (quoting *Rushford*, 2023 WL 8946622, at *2 (alteration in original))); and (3) Plaintiff does not point to any evidence requiring the ALJ to find that he needed a cane prior to December 15, 2023, when Plaintiff's physical examinations were normal prior to that date and Plaintiff reported exercising regularly with no exertional symptoms in fall of 2022, (*id.* at 10).

An RFC determination specifies the "most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1); *Barry v. Colvin*, 606 F. App'x 621, 622 n.1 (2d Cir. 2015) (quoting *id.*); *Oliveras v. Comm'r of Soc. Sec. Admin.*, No. 23-CV-4011, 2025 WL 563910, at *8 (E.D.N.Y. Feb. 20, 2025) (quoting *id.*). With respect to a claimant's physical abilities, an RFC determination indicates the "nature and extent" of a claimant's physical limitations and capacity for work activity on a regular and continuing basis. 20 C.F.R. § 404.1545(b). For example, "[a] limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce [a claimant's] ability to do past work and other work." *Id.* "In determining a claimant's RFC, '[t]he Commissioner must consider objective medical evidence, opinions of examining or treating physicians, subjective evidence submitted by the claimant, as well as the claimant's background, such as age, education, or work history.'" *McGee v. Comm'r*

14

*of Soc. Sec.*, No. 20-CV-3716, 2022 WL 3912575, at *3 (E.D.N.Y. Aug. 29, 2022) (alteration in original) (quoting *Crocco v. Berryhill*, No. 15-CV-6308, 2017 WL 1097082, at *15 (E.D.N.Y. Mar. 23, 2017)); *see also Porteus v. O'Malley*, No. 23-969, 2024 WL 2180203, at *2 (2d Cir. May 15, 2024) (summary order) ("In making the RFC determination, the ALJ is 'entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.'" (alteration in original) (quoting *Schillo*, 31 F.4th at 78)); *Barry*, 606 F. App'x at 622 n.1 ("In assessing a claimant's RFC, an ALJ must consider 'all of the relevant medical and other evidence,' including a claimant's subjective complaints of pain." (quoting 20 C.F.R. § 416.945(a)(3))). "[T]he ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence." *Schillo*, 31 F.4th at 78 (citing *Perales*, 402 U.S. at 399). An ALJ "cannot arbitrarily substitute his own judgment for competent medical opinion." *Id.* (quoting *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999)); *Astrue*, 708 F.3d at 419 (quoting *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998)) (same); *Santangelo v. Saul*, No. 18-CV-6199, 2019 WL 4409339, at *8 (W.D.N.Y. Sep. 16, 2019) ("[A]n ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error.").

The ALJ must evaluate the persuasiveness of each medical source according to several factors such as supportability, consistency, relationship with claimant, specialization, and other factors. 20 C.F.R. § 416.920c(c); *Colgan*, 22 F.4th at 359 n.2 ("Pursuant to the new regulation, the ALJ will consider a series of factors, including, *inter alia*, supportability, consistency, relationship to the claimant, and specialization when evaluating a medical opinion."); *Agueda v. Comm'r of Soc. Sec.*, No. 24-CV-2466, 2025 WL 2653845, at *5 (E.D.N.Y. Sep. 16, 2025) ("[T]he applicable regulations provide that in evaluating the persuasiveness of medical opinions,

15

the ALJ will consider factors including supportability, consistency, relationship with the

claimant, and specialization . . . ." (citing 20 C.F.R. § 404.1520c)).  Supportability and

consistency are the most significant factors to consider, and the ALJ is not required to consider

the other factors in its analysis.  20 C.F.R. §§ 404.1520c(a), (b)(2); *Loucks v. Kijakazi*, No. 21-

1749, 2022 WL 2189293, at *1 (2d Cir. June 17, 2022) (summary order) ("The regulations

explain that when evaluat[ing] the persuasiveness of medical opinions and prior administrative

medical findings, the most important factors . . . are supportability . . . and consistency."

(alterations in original) (internal quotation marks omitted)).  The ALJ must explain how she

considered the two "most important" factors — supportability and consistency — when

determining the persuasiveness of a medical source's opinion.  *Rushford*, 2023 WL 8946622, at

*1.  "If the ALJ fails adequately to explain the supportability or consistency factors, or bases her

explanation upon a misreading of the record, remand is required."  *Heather B. v. Comm'r of Soc.*

*Sec.*, No. 24-CV-1182, 2025 WL 4688013, at *4 (N.D.N.Y. Nov. 7, 2025) (citation omitted),

*report and recommendation adopted*, 2026 WL 788089 (N.D.N.Y. Mar. 20, 2026); *Rivera v.*

*Comm'r of Soc. Sec. Admin.*, No. 19-CV-4630, 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30,

2020) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2021

WL 134945 (S.D.N.Y. Jan. 14, 2021); *see also Loucks*, 2022 WL 2189293, at *2 (remanding

where "the ALJ committed procedural error by failing to explain how it considered the

supportability and consistency of medical opinions in the record"); *Soto v. Comm'r of Soc. Sec.*,

No. 19-CV-4631, 2020 WL 5820566, at *11 (E.D.N.Y. Sep. 30, 2020) (remanding because the

ALJ failed to properly evaluate the supportability and consistency of the medical opinions

provided); *Jackson v. Comm'r of Soc. Sec.*, No. 16-CV-6183, 2019 WL 7283518, at *7

(E.D.N.Y. Dec. 27, 2019) ("It is legal error for the ALJ to create an RFC which conflicts with

16

portions of a medical source statement that was accorded great weight without explaining the inconsistency.").

### i. The ALJ properly considered Drs. Wortman's and Fkiaras' opinion evidence

The ALJ properly considered the opinions of Drs. Wortman and Fkiaras when determining that substantial evidence in the record supported the conclusion that Plaintiff was capable of performing medium work prior to December 15, 2023.  In support of his argument that the ALJ improperly disregarded their opinions, Plaintiff argues that the ALJ conducted "inadequate investigation work and [ ] fail[ed] [ ] to properly seek answers to fundamental questions."  (Pl.'s Mem. 9.)

### 1.  Dr. Wortman's opinion

The ALJ found that Dr. Wortman's opinion unpersuasive because it was inconsistent with Dr. Wortman's own examination records and the complete evidentiary record.  (R. 17–18, 19–20.)  While Plaintiff contends that the ALJ had an obligation to seek further consultation with Dr. Wortman if she believed his opinion was inconsistent with the treatment records, the Second Circuit has found that while "[a]n ALJ generally has an affirmative duty to develop the administrative record, including when there are deficiencies in the record[,] . . .a deficiency in reasoning by a treating physician is not the same as a gap in treatment records."  *Schillo*, 31 F.4th at 76; *cf. Pratts v. Chater*, 94 F.3d 34, 38 (2d Cir. 1996) (concluding that the record offered "no basis to find the substantial evidence necessary to uphold the ALJ's decision" given that much of the claimant's medical history was missing and that the medical records appearing in the record were frequently incomplete or illegible, providing "no coherent overview of [the claimant's] treatment").  In assessing Dr. Wortman's opinion, the ALJ noted that Dr. Wortman had "fairly unremarkable treatment notes," but not that Plaintiff had a gap in the record regarding his

17

medical history. (R. 18, 20.) To the contrary, Plaintiff's treatment records by Dr. Wortman in the record are extensive, with multiple appointments documented each year between June of 2021 and July of 2024. (*See* Joint Stip. of Facts 2–5.) In her reasoning, the ALJ specified specific portions of the record that undercut Dr. Wortman's findings that Plaintiff had severe osteoarthritis of the bilateral hips and knees prior to December 15, 2023, including Dr. Wortman's own treatment notes which failed to include evidence of severe degenerative changes to the hips and spine prior to Plaintiff's December 19, 2023 evaluation and Dr. Wortman's assessment of a normal physical in June of 2023. (*See* R. 19–20.)

Furthermore, Plaintiff incorrectly contends that Dr. Wortman was "especially well positioned to assess [P]laintiff's RFC" as his attending physician because the Court is not required to give controlling weight to a plaintiff's physician when the opinion is unsupported or inconsistent with the record. *See Vazquez v. King*, No. 23-7816, 2025 WL 366427, at *1 (2d Cir. Feb. 3, 2025) (summary order) (finding "the ALJ properly declined to give controlling weight" to the plaintiff's treating physician's opinion "when the opinion is inconsistent with other substantial evidence in the record"); *Calicchio v. Comm'r Soc. Sec. Admin.*, No. 24-CV-1065, 2025 WL 1489763, at *9 (E.D.N.Y. May 23, 2025) ("[T]he ALJ was not required to give special deference to the opinion of [plaintiff's] treating physician." (second alteration in original) (quoting *Rushford*, 2023 WL 8946622, at *1)).

Accordingly, the ALJ did not err in failing to contact Dr. Wortman for supplementary information. *See Schillo*, 31 F.4th at 76 (concluding that the ALJ correctly assessed the record without seeking supplementary information because the administrative record contained a "complete record" that included medical opinions, treatment notes, test results, and the plaintiff's own testimony).

18

## 2.    Dr. Fkiaras' opinion

The ALJ found Dr. Fkiaras' opinion to be unpersuasive for the period prior to December 15, 2023, the date of Dr. Fkiaras' consultive examination of Plaintiff, because it was inconsistent with the record including 2021 imaging of the hips that showed only mild degenerative changes, significant relief from injections, and a normal physical examination as late as June of 2023.  (R. 18, 20.)  The ALJ properly considered the consistency and supportability of Dr. Fkiaras' examination, noting in her decision the specific evidence that went against his conclusion regarding Plaintiff's limitations prior to the date of evaluation, and relied on the evidence submitted by Plaintiff as a whole.  *See Nicole B. v. Comm'r of Soc. Sec.*, No. 23-CV-900, 2024 WL 3754900, at *8 (W.D.N.Y. Aug. 12, 2024) (affirming the ALJ's RFC finding where the ALJ considered the full ambit of evidence and found the physicians' opinions unpersuasive or partially persuasive).  Moreover, the ALJ acted within her discretion in discounting Dr. Fkiaras' opinion about Plaintiff's limitations prior to December 15, 2023 because "the ALJ bears 'the final responsibility' for making RFC determinations," *Schillo*, 31 F.4th at 78 (quoting 20 C.F.R. § 404.1527(d)(2)), and therefore, the "ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence," *id.* (quoting *Richardson*, 402 U.S. at 399).  *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (stating the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole").

First, Platiniff argues that there should have been an earlier onset date based on Dr. Fkiaras' opinion, (Pl's Mem. 11–12), but Plaintiff has the burden of demonstrating that the date of disability should have been earlier, *see* 20 C.F.R. § 416.912(a)(2)(i) (stating the claimant has the responsibility to prove the "nature and severity of [their] impairment(s) for any period in

19

question"), and Plaintiff points to no specific evidence supporting that he had increased limitations, particularly the degenerative changes to the lumbar spine, prior to the December 15, 2023 date that the ALJ concluded. Plaintiff only cites Dr. Fkiaras' opinion and claims that his findings of marked limitations for walking, pushing, pulling, lifting, and carrying and a moderate-to-marked limitation for standing necessitates a finding by the ALJ of a capacity of less than medium work prior to December 15, 2023 because his opinion "never suggested that there had been a change in [P]laintiff's RFC status." (Pl.'s Mem. 12.) Based on this, Plaintiff argues that the ALJ's conclusion implies that he "suffered a sudden and unexplained aggravation" when he became limited to light activity, which "challenges common sense." (*Id.*)

Plaintiff ignores the ALJ's careful reasoning through the complete medical evidence in the record which supports the ALJ's conclusion that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects are not fully supported prior to December 15, 2023." (R. 16.)

The Court finds that substantial evidence exists in the record to support the ALJ's conclusion of the change from medium to light work capacity on the date of December 15, 2023.[11] In her decision, the ALJ concluded that "[t]he record before the established onset date

---

[11] For the same reasons as those discussed *supra* Section II.b.i.1 regarding the development of the administrative record to supplement Dr. Wortman's opinion, the Court finds that the ALJ properly assessed the medical evidence in the record and there was no need for supplemental questioning of Dr. Fkiaras or any other physician to further evaluate when Plaintiff's capacity changed from medium to light work, as Plaintiff contends, (Pl.'s Mem. 12). *See Schillo*, 31 F.4th at 76 ("To be sure, a hearing on disability benefits is a non-adversarial proceeding. An ALJ generally has an affirmative duty to develop the administrative record, including when there are deficiencies in the record. But a deficiency in reasoning by a treating physician is not the same as a gap in treatment records . . . . Here, [ ] there was a complete record before the ALJ consisting of medical opinions, treatment notes, and test results from 2016 to 2018, as well as [the plaintiff's] own testimony . . . . [The plaintiff] has not identified any missing medical records that should have been included in the record, and we are aware of none. Accordingly, the ALJ did not err in failing to supplement the administrative record." (citations

20

showed few positive findings, response to treatment, and the [Plaintiff] was able to perform activities such as exercising." (*Id.* at 16.) Where medical evidence is contradictory, "the ALJ [is] entitled to 'weigh the conflicting evidence in the record' and resolve any such conflicts." *Porteus*, 2024 WL 2180203, at \*2 (quoting *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998)); *see Calicchio*, 2025 WL 1489763, at \*10 (finding the ALJ properly weighed contradictory medical evidence in the record where the ALJ's RFC finding conflicted with the physician's opinion); *Birgid H. v. Comm'r of Soc. Sec.*, No. 21-CV-253, 2023 WL 5019596, at \*7 (W.D.N.Y. Aug. 7, 2023) (concluding the ALJ's RFC conclusion was proper because the ALJ "adequately explained the reasons underlying her evaluation of the various medical opinions and that substantial evidence supports her determination"); *see also Xhevat G. v. Bisignano*, No. 24-CV-1671, 2025 WL 3140839, at \*4 (D. Conn. Nov. 10, 2025) ("Even if there were evidence in the record supporting a more restrictive RFC, the relevant question is whether substantial evidence supports the ALJ's decision." (quoting *Langston v. Comm'r of Soc. Sec.*, No. 21-CV-723, 2024 WL 127850, at \*11 (E.D.N.Y. Jan. 11, 2024))); *Angela C. v. Comm'r of Soc. Sec.*, No. 24-CV-249, 2025 WL 14797, at \*6 (W.D.N.Y. Jan. 2, 2025) ("To the extent there were medical opinions with more severe assessments of Plaintiff's functioning than was assessed in the RFC, where there is conflicting evidence in the record, it is the ALJ's duty to consider and weigh those discrepancies — and it is not the court's function to re-weigh the evidence." (citing *Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016))).

The same reasoning applies to Plaintiff's argument that a finding of a capacity for medium work "challenges common sense" because he was "at all relevant times a sexagenarian

---

omitted)). As in *Schillo*, the ALJ in this case evaluated a complete record consisting of medical opinions, treatment notes spanning the period in question, X-ray imaging, and testimony, and Plaintiff has not identified any missing medical records. *See id.*

21

with multiple musculoskeletal disorders and reliant on a cane for walking." (*See* Pl.'s Mem. 12.) Plaintiff's assertion contradicts the other evidence in the record that the ALJ relied on to conclude a capacity for medium work prior to December 15, 2023, including "2021 imaging of the hips only show[ing] 'mild' degenerative changes without an acute osseous abnormality," multiple normal physical examinations "consistent with the range of medium work," relief from injunctions, and the "the activities noted in the record show[ing] [Plaintiff] could perform the range of medium work" including exercise and switching from using a treadmill to a stationary bike in July of 2022. (R. 16–17.) The ALJ also noted that Plaintiff testified to using a cane consistently since 2021, but that other medical evidence demonstrated his capacity for medium work prior to the date of onset. (*Id.* at 16.) Where medical evidence is contradictory, "the ALJ [is] entitled to 'weigh the conflicting evidence in the record' and resolve any such conflicts." *Porteus*, 2024 WL 2180203, at *2 (quoting *Schaal*, 134 F.3d at 504); *see also Nunez*, 164 F.4th at 70 ("Indeed, under the substantial evidence standard, the SSA's determination must be upheld if it is rational and supported by the record, even '[i]f [the] evidence is susceptible to more than one rational interpretation.'" (alterations in original) (quoting *Schillo*, 31 F.4th at 74)).

Second, Plaintiff contends that the ALJ improperly concludes from Dr. Fkiaras' opinion that he has the capacity for light work after December 15, 2023 and that Dr. Fkiaras' opinion instead supports a finding of sedentary or less-than sedentary work, (Pl.'s Mem. 11), but this distinction is immaterial. Taking into consideration "[Plaintiff]'s age, education, work experience, and residual functional capacity" on December 15, 2023, the ALJ found Medical-Vocational Rule 202.04 mandated a finding of disability with a capacity of light work. (R. 22.) The ALJ noted that that "[e]ven if the [Plaintiff] had the residual functional capacity for the full range of light work," and not the restrictions the ALJ noted of "occasional[] climb[ing],

22

crouch[ing], crawl[ing], stoop[ing], and kneel[ing] and [ ] requir[ing] a cane," Plaintiff would still be considered disabled.  (*Id.* at 19, 22.)  The ALJ's finding of light work with some restrictions already awards Plaintiff disability benefits, the most positive outcome possible.  Even if a more restrictive RFC finding could have been made by the ALJ, like a finding of sedentary or less-than sedentary work as Plaintiff contends, the outcome would be the same for Plaintiff.  Under an RFC of either light work or sedentary work, the ALJ is required to make a finding of disability based on Plaintiff's other vocational factors including age, education, and work experience.  (*See id.* at 22.)  Because an RFC of sedentary work would lead to the same conclusion as an RFC for light work — a finding that Plaintiff became disabled, this is a harmless error that the Court declines to review.  *See Mariah T. v. Comm'r of Soc. Sec.*, No. 24-CV-6173, 2025 WL 918672, at *4 n.3 (W.D.N.Y. Mar. 26, 2025) (declining to address the plaintiff's alleged issue with the ALJ's discounting of the physician's opinion because "it constitutes, at most, harmless error"); *Darnise C. v. Comm'r of Soc. Sec.*, No. 20-CV-1842, 2022 WL 896762, at *8 (W.D.N.Y. Mar. 28, 2022) ("[E]ven assuming that the ALJ had included those additional limitations in the RFC it would not have changed the outcome of the ALJ's decision. The [c]ourt therefore finds that any error by the ALJ . . . was harmless."); *see also Jesse James U. v. Comm'r of Soc. Sec.*, No. 24-CV-422, 2025 WL 2202992, at *8 (N.D.N.Y. May 15, 2025) (stating an error is harmless where the "application of the correct legal principles to the record could lead only to the same conclusion" (citation omitted)), *report and recommendation adopted*, 2025 WL 2197193 (N.D.N.Y. Aug. 1, 2025).

Accordingly, the Court finds the ALJ properly evaluated the supportability and consistency of Dr. Fkiaras' opinion and that substantial evidence supports the ALJ's finding that

23

Plaintiff's impairments caused greater functional limitations as of December 15, 2023 and not before.

### III. Conclusion

For the foregoing reasons, the Court denies Plaintiff's motion for judgment on the pleadings and grants Commissioner's cross-motion for judgment on the pleadings.  The Clerk of Court is directed to close this case.

Dated:  June 5, 2026
       Brooklyn, New York

SO ORDERED:

                         s/ MKB
                 MARGO K. BRODIE
                 United States District Judge